IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| NIGEL POTTER; | : | CR 03-81-01ML |
| DANIEL BUCCI; and | : | (Superseding Indictment) |
| BURRILLVILLE RACING ASSOCIATION | : | |
| a/k/a LINCOLN PARK | : | |
| a/k/a LINCOLN GREYHOUND PARK | : | |
| a/k/a LINCOLN PARK, INC. | : | |

**DEFENDANT NIGEL POTTER'S MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant Nigel Potter hereby moves under F.R.Crim., p. 29, for judgment of acquittal on all counts. He states his reasons in the accompanying memorandum of law.

Respectfully submitted,
NIGEL POTTER
By his Attorneys,

C. LEONARD O'BRIEN, ESQ. (#1886)
B. JEAN ROSIELLO, ESQ. (#2886)
MacFadyen, Gescheidt and O'Brien
The Owen Building
101 Dyer Street
Providence, RI 02903

Dated: July 25, 2005

**CERTIFICATION**

I hereby certify that I hand-delivered a copy of the within document to Craig Moore and Lee Vilker, Assistant United States Attorneys, U.S. Attorney's Office, 50 Kennedy Plaza, 8th floor, Providence, RI 02903; to John Tarantino, Esq., Adler, Pollock & Sheehan, P.C., 1 Citizens Plaza, 8th Floor, Providence, RI 02903, and to Anthony Traini, Esq., 56 Pine Street, Providence, RI 02903, on the 25th day of July, 2005.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | |
| NIGEL POTTER;<br>DANIEL BUCCI; and<br>BURRILLVILLE RACING ASSOCIATION<br>a/k/a LINCOLN PARK<br>a/k/a LINCOLN GREYHOUND PARK<br>a/k/a LINCOLN PARK, INC. | : | CR 03-81-01ML<br>(Superseding Indictment) |

**DEFENDANT NIGEL POTTER'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant Nigel Potter has moved under F.R.Crim. p. 29 for a judgment of acquittal on all counts of this indictment. The government has failed to present evidence which would justify a guilty verdict on a number of the elements of the offenses with which he is charged. Specifically, the government has failed to generate proof beyond a reasonable doubt of:

- an intent to deprive the public of honest services
- an intent to deceive
- execution of a scheme to defraud
- existence of an agreement to commit the designated offenses
- Mr. Potter's intention to agree and participation in that agreement
- reasonably foreseeable use of the wires in execution of the scheme

At this juncture, the issue for this Court is whether, taking the evidence in the light most favorable to the government, and drawing all reasonable inferences from that

evidence, it is "such that a rational mind might fairly find guilty under reasonable doubt." *United States v. Rothrock*, 806 F.2d 318, 320 (1st Cir. 1986). Even under this strict standard, the government's proof falls short.

**Intent to Deprive of Honest Services**

Wire fraud is a specific intent offense, requiring independent proof of whether the alleged scheme targeted a citizen's right to "honest services" and further was designed to operate through deceit. *United States v. Sawyer,* 85 F.3d 713 (1st Cir. 1996). The statute, however, does not criminalize an intention to garner political influence. It does not reach actions designed to facilitate access to public officials. And it does not criminalize efforts to take advantage of a public perception of unique political access, of a relationship to political power. *See, United States v. D'Amato,* 39 F.3d 1249 (2nd Cir. 1994) (copy attached).

This is true even where large amounts of money are paid to facilitate this access. The *D'Amato* case is one on point. There, a corporation paid an attorney a large sum of money in order to gain access to his brother, who was a legislator. The fact that the size of the payment was not commensurate with the work to be performed was insufficient to make out a case of mail fraud. The Second Circuit "[d]eclined the government's invitation to infer fraudulent intent on the part of an attorney who accepts a retainer arrangement and is subsequently not called on to perform services that the government or the trier of fact deems worthy of the fee paid." *Id.* at 1262. Indeed, the court called the argument to the contrary "seriously misguided." *Id.*

The government's evidence in this case consists of a number of facsimile communications from Daniel Bucci to Nigel Potter which made a variety of confusing and often contradictory, but suggestive predictions of disaster to Lincoln Park's political agenda if the Company were not seen to be more generous, and in particular if a large bonus/retainer were not paid to the Company's long-time outside counsel, Daniel V. McKinnon, Esq. Little in the faxes is straightforward; much is innuendo. Further, a parsing of the faxes shows that in many circumstances Mr. Bucci was talking about the need to give him license to use corporate funds to pay political contributions, something that Wembley plc and Nigel Potter had consistently refused to do. Other faxes contain the suggestion that if Mr. McKinnon were not recompensed at a much greater rate, he (an independent contractor) might be tempted to go to work for the proponents of an Indian casino. And finally, there are some lines in the faxes which suggest that beyond McKinnon, there were additional persons – "these folks and their designees" – whose loyalty needed to be retained.

Cabined with this evidence, and taken in the light most favorable to the government, there is the testimony of two witnesses, Mr. Sherman and Mr. Brents, who have claimed that they informed Mr. Potter that they were against Mr. Bucci's proposal to pay Mr. McKinnon a greatly augmented bonus/retainer and, further, that they said that such a payment would be illegal or at least "potentially illegal."

Finally, there is the evidence of Mr. Potter's own faxes, particularly those in the first two weeks of December, 2000. Again read in the light most favorable to the government, these faxes assert an agreement to a McKinnon payment structured in

specific dollar increments conditioned on the successful attainment of one piece of Lincoln's political agenda: an increase in the number of VLT machines. This "agreement" is joined by the fact that a figure of $600,000 was placed in the list of assumptions for the Wembley plc 2001 budget, essentially subtracting $600,000 off the proposed profit line. This evidence, however, must be assessed in conjunction with other evidence presented by the government, namely the testimony of Mark Elliott, who stated that placing a dollar figure in the budget as an assumption was not a decision to spend that money.

Taken altogether, the government's case for the specific intent demanded by 18 U.S.C. § 1343 depends on the successful sequencing of a number of inferences. From the proven facts of the facsimile communications by Daniel Bucci and the warnings by Mr. Sherman and Mr. Brents, the fact finder must infer the following:

- First, that Mr. Potter received this information;
- Second, that he actually read or heard it, including particularly the most inculpatory comments;
- Third, that he understood what Bucci was saying in his most suggestive comments;
- Fourth, that where Bucci was confusing or contradictory, Mr. Potter elected to accept the worst interpretation of what he was saying, i.e., that he was proposing to bribe John Harwood;
- And fifth, that when he wrote his December 12, 2000 fax acknowledging that he "agreed," and caused a dollar figure for a McKinnon bonus/retainer to be placed in the Wembley plc 2001 budget, that he was intending to carry out an illegal purpose.

The First Circuit Court of Appeals has noted that federal judges should be "loathe to stack inference upon inference in order to uphold the jury's verdict." *United States v.*

*Valerio,* 48 F.3d 58, 63-64 (1st Cir. 1995). Yet that is what is required here to reach a point where a reasonable juror could find proof of a specific intent to defraud beyond a reasonable doubt.

The single piece of evidence which directly addresses what Nigel Potter was thinking (as opposed to what he was told by Mr. Bucci,, Mr. Sherman or Mr. Brents) is the December 7, 2000 fax. That fax, however, is unequivocal that Mr. Potter was thinking in terms of what *Mr. McKinnon* would do for the money, not what *Mr. Harwood* would do. Indeed, this fax cannot be reconciled with an ongoing criminal intent. No sane person asks that his criminal arrangements be set down with precision on paper, and then keeps that paper. And no one asks what work a person will do for the money if that person is nothing more than the "bag man" for a bribe.

This Court must take the evidence in the light most favorable to the government, but when it does so, it cannot ignore other evidence which the government itself has presented. In a circumstantial evidence case, the question is whether the evidence as a whole is sufficient to warrant a verdict of guilty beyond a reasonable doubt. And here, the government's evidence falls short.

**Intent to Deceive**

In *United States v. Sawyer, supra* at 732, the First Circuit made clear that an intent to deceive is a separate element of mail and wire fraud which must be independently proven. Here too, the government's case falls short. The government's claim is that by characterizing a payment to McKinnon as a bonus or retainer, the defendants were concealing its true nature, which was a bribe. This argument confuses the fact of the

proposed payment with the alleged intent with which it was made. If the money had been transferred to McKinnon & Harwood, it would be just that: a payment of a certain amount of money with or without any conditions attached. The fact that, according to the government, the payment had an ulterior purpose to cause Mr. Harwood to forget his public duty, does not change the fact of the payment. In these circumstances, no deceit can be found unless there is some evidence that the payment was intended to be concealed, such as being paid in cash or the like.

Here, all the evidence is to the contrary: that the money would go through normal business channels and would be treated as a normal business expenditure, assuming, of course, that Wembley plc ever reached the point of deciding that it should be paid. Indeed, where Mr. Potter is concerned, his fax communications demonstrate an effort to ensure that the terms and conditions of the payment are clearly spelled out. According to the December 1, 2000 fax, he is suggesting that there be a retainer with a success fee attached, that additional remuneration be tied to the successful achievement of additional VLT machines. This is not deceit or concealment; it is the very opposite.

**Execution of the Scheme**

By its terms, 18 U.S.C. § 1343 criminalizes only the execution phase of a scheme to defraud. The statute embodies a deliberate decision to trigger the operation of the federal criminal law only at the point where the scheme, having been devised, is then executed through wire transmissions. As the Supreme Court of the United States has put it, "the federal mail fraud statute does not purport to reach all fraud, but only those limited instances in which the use of the mails is part of the execution of the fraud,

leaving all other cases to be dealt with by appropriate law. *Schmuck v. United States,* 489 U.S. 705, 742 (1989), quoting *Kann v. United States,* 323 U.S. 88, 95 (1944).

Defendant has addressed this issue at length in a motion to dismiss the indictment. He incorporates by reference the arguments which he and his co-defendants made on these motions. Several points, however, need to be stressed.

First, defendant has been unable to locate a single case where there has been a prosecution and conviction of someone under 18 U.S.C. § 1341 or 1343 and the use of the mails or wires never went beyond a discussion of the terms of the alleged scheme. In colloquial terms, these statutes have never been used to criminalize mere "talk." In every instance of previous prosecution, the evidence has shown that the scheme has moved down the road to reach the stage of operative fraudulent events, usually involving some kind of contact with the victim.

In the honest services arena, it has universally involved actual contact with the public official. Proof has been presented that the scheme has moved forward to the point where the deprivation of honest services is clearly in view and apparently (although not necessarily actually) achievable.

In this instance, the case against Mr. Potter does not come close. Every last one of the faxes which are charged as instances of wire fraud involve postulating or querying the financial components of what the government alleges to have been Mr. Bucci's scheme. Several of the charged facsimiles are on their face an effort to gain more information about what it is that Daniel Bucci has in mind. *See,* facsimile of December

6, 2000 ("I think we need to have a chat") and facsimile of December 7, 2000 (seeking information about what it is that Daniel McKinnon would do in return for the payment).

Both the Supreme Court of the United States and the First Circuit Court of Appeals have steadfastly refused to expand the contours of the mail and wire fraud statutes absent explicit direction from Congress. *See, Cleveland v. United States,* 531 U.S. 12, 24 (2000); *McNalley v. United States,* 43 U.S. 350, 360 (1987); *United States v. Boots,* 80 F.3d 580, 588 (1st Cir.), *cert. denied,* 519 U.S. 905 (1996). Nothing in the prior case law suggests that 18 U.S.C. § 1343 should be expanded to encompass mere discussion of the terms of what the government alleges to be a scheme to defraud. By their nature, such discussions do not satisfy the dictionary definition of "execution." Hence the statute is clear on its face and needs no construction.

But if construction were to be required, the Supreme Court has found the mail and wire fraud statutes to be fit subjects for the rule of lenity, requiring the narrowest of alternative constructions. *Cleveland, supra* at 25; *McNalley, supra* at 359-360.

**Conspiracy**

The government's evidence of a criminal agreement suffers from all the deficits of the inference pyramiding described above, with the additional requirement that the government prove that Mr. Potter agreed with Mr. Bucci's alleged scheme, that he "in some sense promote[d] [his] venture himself, ma[d]e it his own." *United States v. Falcone*, 109 F.2d 579, 581 (2nd Cir.), *aff'd.*, 311 U.S. 205 (1940).

In addition to the agreement component of the conspiracy, the government's evidence fails on another component: proof that use of the wires was intended or

reasonably foreseeable in the execution phase of the scheme. There is nothing in the evidence that would suggest that if this alleged scheme were ever to move to the point where it was actually being executed – where contact was being made with John Harwood with the aim to have him foreswear his public duty and in some measure take public action based on private payment, not the public good – there is no suggestion that the wires would be used. The evidence suggests that Wembley USA paid by check, and there is no reason to believe that any communication with Mr. Harwood would be anything except in person. All of this is total speculation (indeed unfair and offensive speculation), but the point is that the evidence in this case is so far removed from any execution of any alleged scheme, that use of an interstate wire communication is nothing more than rank conjecture.

**Conclusion**

For all of these reasons, for those stated previously in the motions to dismiss, and for those that will be stated at argument of this case, Nigel Potter asks this Court to enter a judgment of acquittal on all counts of the indictment.

Respectfully submitted,
NIGEL POTTER
By his Attorneys,

C. LEONARD O'BRIEN, ESQ. (#1886)
B. JEAN ROSIELLO, ESQ. (#2886)
MacFadyen, Gescheidt and O'Brien
The Owen Building
101 Dyer Street
Providence, RI 02903

Dated: July 25, 2005

**CERTIFICATION**

I hereby certify that I hand-delivered a copy of the within document to Craig Moore and Lee Vilker, Assistant United States Attorneys, U.S. Attorney's Office, 50 Kennedy Plaza, 8th floor, Providence, RI 02903; to John Tarantino, Esq., Adler, Pollock & Sheehan, P.C., 1 Citizens Plaza, 8th Floor, Providence, RI 02903, and to Anthony Traini, Esq., 56 Pine Street, Providence, RI 02903, on the 25th day of July, 2005.